# RENEWABLE RESOURCE MATERIAL ("RRM") AGREEMENT

This Agreement, made as of June 30, 2016, by and between MONSANTO COMPANY, a Delaware corporation, with its headquarters at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167 (hereinafter referred to as "Monsanto"), and ALTEN, LLC, a Kansas limited liability company, with offices at 5225 Renner Road, Shawnee, Kansas 66217 (hereinafter referred to as "Contractor").

## WITNESSETH THAT:

WHEREAS, Monsanto is willing to assign RRM to Contractor for Contractor's use in the production of ethanol at its Facilities; and

WHEREAS, Contractor is willing to utilize RRM from Monsanto in the production of ethanol at its Facilities;

NOW, THEREFORE, Contractor and Monsanto, each in consideration of the covenants of the other hereinafter set forth, which are good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, agree as follows:

1. **DEFINITIONS:**

   By-products shall mean all solid and liquid materials, other than ethanol, generated in the production of ethanol from RRM.

   EPA shall mean the United States Environmental Protection Agency.

   Facilities shall mean Contractor's ethanol production plant located in Mead, Nebraska.

   NDEQ shall mean the Nebraska Department of Environmental Quality.

   Agreement shall mean this document and all Exhibits and attachments hereto.

   RRM shall mean seed, both treated and untreated, offered to Contractor by Monsanto.

   Shipping Materials shall mean materials that Monsanto uses to ship or contain RRM including, but not limited to, pallets, buckhorn boxes, seed bins, seed bags, bulk bags, corrugated boxes, staples, and shrink wrap.

2. **TERM, TERMINATION, AND SURVIVAL.** The term of this Agreement shall commence as of the date first set forth above and shall continue for (3) three years unless terminated in writing by either party with ninety (90) days notice. Monsanto shall have the right to immediately terminate or suspend this Agreement in the event of any of the following events: i) Contractor should breach the terms hereof; ii) Contractor should fail to be in compliance with NPDES Permit No. NE0137634, IIS File No. PCS84069-P; Waste Management Permit No. NE0204447, Facility ID No. 84069; or any other certification, regulation or law related to the Facilities; or iii) the Contractor should fail to accept delivery of RRM as set forth herein. Further, those sections that by their nature will not be fully performed during the term of this Agreement, including but not limited to any provisions related to indemnification, secrecy, and By-products, will survive the expiration or termination of this Agreement.

3. **ADMINISTRATION AND PRICING.** Payments, return service, scheduling, invoicing and pricing shall be in accordance with the terms of Exhibit A, the terms of which are incorporated herein.

4. **NOTICE.** Except as otherwise specifically provided, any notice required or permitted to be given under this Agreement shall be (i) in writing delivered in person, which delivery the recipient agrees to acknowledge in writing sent by registered or certified mail, return receipt requested, postage prepaid:

1

(ii) transmitted by facsimile with a copy delivered on the next business day by a nationally recognized overnight courier service; (iii) deposited in the United States postal service mail (or, if outside the United States, such other country's postal service mail) postage fee prepaid, for mailing by first-class, registered or certified mail, (iv) sent by a nationally recognized overnight courier service, or (v) by electronic email with acknowledgement by the other party addressed as follows:

> If to Monsanto, it shall be addressed to:
> Monsanto Company
> Procurement G3NC
> Attention: Tim DeMunbrun
> Title: Category Manager
> Phone: (314) 694-4558
> E-mail: Tim.j.demunbrun@monsanto.com
>
> If to Contractor, it shall be addressed to:
> AltEn, LLC
> 5225 Renner Road, Shawnee, Kansas 66217
> Attention: Dennis Langley
> Email: dlangley@mrgkc.com
> Mobile: (913) 515-2745
> Office: (913) 962-9999
> and
> Attention: Tanner Shaw
> Mobile: (702) 561-1022
> Email: tshaw@mrgkc.com

or to such other address or individual as either party may specify from time to time by written notice given by such party.

5. **CONTRACTOR'S SERVICES**. The Contractor shall accept delivery of RRM and Shipping Materials offered by Monsanto, shall process RRM into ethanol at the Facilities, and shall manage Shipping Materials and By-products as specified herein. Contractor shall use RRM exclusively for ethanol production and shall not dispose of the RRM in any other manner. Contractor shall promptly utilize RRM for ethanol production at the Facilities, in no event more than 365 days from delivery. Until Contractor uses RRM for ethanol production, Contractor shall store all RRM in a secure location at the Facilities, inside, away from wildlife, and with minimal human contact. While at Monsanto facilities, Contractor and its agents shall comply with all Monsanto site policies, which will be provided to Contractor in advance of any work at Monsanto's facilities.

6. **TITLE AND RISK OF LOSS.** Acceptance of RRM and Shipping Materials shall be effective and title, risk of loss and all other incidents of ownership shall be transferred from Monsanto and vested in Contractor upon loading of the RRM and Shipping Materials onto vehicles used to transport RRM from Monsanto to Contractor. Acceptance of returned Shipping Materials shall be effective, title and risk of loss and all other incident of ownership shall be transferred from Contractor to Monsanto upon the loading of the Shipping Materials onto vehicles used to transport Shipping Materials from Contractor to Monsanto.

7. **CONTRACTOR'S REPRESENTATIONS AND WARRANTIES**. Contractor represents and warrants that:

> a) Contractor is engaged in the business of using RRM for ethanol production and has the requisite experience, knowledge and expertise; suitable facilities; qualified personnel; and legal right to utilize the RRM supplied hereunder to produce ethanol.

b) Contractor and its Facilities are in compliance with and, in utilizing RRM, shall remain in compliance all applicable laws, ordinances, orders, rules, regulations and actions of the United States, EPA, NDEQ and any state or political subdivision thereof or other governmental unit or agency, including but not limited to the Worker Protection Standards set forth in 29 CFR 1910.120.

c) Contractor and its Facilities have obtained, are in compliance with, shall keep in effect, and shall remain in compliance with all permits, licenses and certifications necessary for utilizing RRM for ethanol production as contemplated herein, including but not limited to NPDES Permit No. NE0137634, IIS File No. PCS84069-P and Waste Management Permit No. NE0204447, Facility ID No. 84069. Upon request of and without charge to Monsanto, Contractor shall furnish Monsanto with copies thereof, together with any certificates or other instruments related to the performance by Contractor of its obligations under this Agreement.

d) Contractor knows and understands that the RRM and/or Shipping Materials are, or may have been, in contact with or contain materials that are, flammable, toxic, hazardous or defective. Certain information as to the character of the RRM and certain recommended precautions for exposure to and handling of the RRM have been provided to Contractor by Monsanto. Contractor shall advise and inform its employees, agents, representatives and subcontractors of the nature of RRM and the Shipping Materials and the potential hazards connected with it prior to such individuals' employment in connection with the handling of the RRM or Shipping Materials and shall see that all appropriate safety and handling precautions are followed to ensure the safety and well-being of persons, property and the environment in the utilization of the RRM or Shipping Materials.

8. **BY-PRODUCTS**. Contractor shall convert all solid By-products into Bio-char which shall be used for environmental remediation purposes only. Contractor shall recycle all liquid By-products entirely within the Facilities. In no event shall Contractor allow any By-products to be used for livestock feed or for agronomic purposes. Contractor shall handle, store, and process RRM so that it is segregated from seed whose by-products from ethanol manufacturing may be used for livestock feed or agronomic purposes.

9. **PUBLICITY**. Contractor may not refer to Monsanto or any of Monsanto's subsidiaries or use or refer to any of Monsanto's trademarks including logos and taglines in any way, including but not limited to promotional and marketing materials or press releases, without prior written permission from Monsanto except as necessary to provide services under this Agreement.

10. **INDEMNIFICATION**. Contractor assumes sole responsibility for, and shall indemnify and hold harmless Monsanto, its present, past and future employees, officers, directors, agents, and assigns from and against any and all third-party or direct claims, liabilities, suits, proceedings, judgments, orders, fines, penalties, damages (special, incidental, consequential, or indirect), losses, costs and expenses (including, without limitation, costs of defense, settlement and reasonable attorneys' fees and expenses), (all of the foregoing herein collectively called "Liabilities, Proceedings and Damages"), arising out of or connected with (a) any RRM following delivery thereof to Contractor; (b) the utilization of the RRM or any other activities or operations of or by Contractor, its employees or agents under or related to this Agreement; (c) any negligent act(s) or omission(s) by the Contractor or any of its employees or agents; or (d) any failure of Contractor or any of its employees or agents to observe or comply with any of Contractor's duties or obligations under this Agreement including, without limitation, any failure to observe or comply with any applicable laws, ordinances, codes, orders, rules or regulations, including those Liabilities, Proceedings and Damages caused by the joint or concurring negliget act or omission of Monsanto. The foregoing obligations of Contractor shall include, but not be limited to, any and all Liabilities, Proceedings and Damages for or relating to (i) injury to or death of any person (including, without limitation, employees and agents of Contractor), (ii) damage to or loss or destruction of any property (including, without limitation, property of Contractor, and its employees and agents), and

3

(iii) any contamination of, injury or damage to or adverse effect on persons, animals, aquatic or wild life, vegetation, waters, air, land or the environment.

The foregoing indemnification shall apply regardless of the basis of liability or legal principle involved (including, without limitation, contract, warranty, negligence, strict liability, other tort, violation of law or otherwise), but shall not apply to Liabilities, Proceedings and Damages resulting solely and directly from Monsanto's negligence or willful or criminal misconduct.

Upon the request of Monsanto or any other person or party covered by the foregoing indemnification, Contractor shall, at its expense, cause any such claims, liabilities, suits or proceedings to be defended by counsel approved by Monsanto, and Monsanto shall have the right, at Contractor's expense, to participate in the investigation, defense, settlement and/or compromise of same.

Monsanto assumes sole responsibility for, and shall indemnify and hold harmless Contractor, its present, past and future employees, officers, directors, agents, and assigns from and against any and all Liabilities, Proceedings and Damages, arising out of or connected with any negligent act(s) or omission(s) by Monsanto or any of its employees or agents. The foregoing obligations of Monsanto shall include, but not be limited to, any and all Liabilities, Proceedings and Damages for or relating to (i) injury to or death of any person (including, without limitation, employees and agents of Contractor or Monsanto), (ii) damage to or loss or destruction of any property (including, without limitation, property of Contractor or Monsanto, and their employees and agents), and (iii) any contamination of, injury or damage to or adverse effect on persons, animals, aquatic or wildlife, vegetation, waters, air, land or the environment.

The foregoing indemnification shall apply regardless of the basis of liability or legal principle involved (including, without limitation, contract, warranty, negligence, strict liability, other tort, violation of law or otherwise), but shall not apply to Liabilities, Proceedings and Damages resulting from Contractor's negligence or willful or criminal misconduct.

Upon the request of Contractor or any other person or party covered by the foregoing indemnification, Monsanto shall, at its expense, cause any such claims, liabilities, suits or proceedings to be defended by counsel approved by Contractor, and Contractor shall have the right, at Monsanto's expense, to participate in the investigation, defense, settlement and/or compromise of same.

11. **INSURANCE BY CONTRACTOR.**

   a) Contractor shall not begin the performance under this Agreement until: (i) it has obtained all the insurance required by this Agreement; and (ii) it has furnished Monsanto with certificates of insurance satisfactory to Monsanto evidencing such required insurance; and (iii) copies of any provisions in Contractor's contract(s) of insurance excluding coverage for pollution have been provided to Monsanto.

   b) Every certificate of insurance evidencing the coverages required herein shall provide that such coverages shall not be terminated, reduced or allowed to expire without the insurance carrier first giving Monsanto at least thirty (30) days' prior written notice thereof, and Contractor shall make such arrangements as are necessary to ensure that no termination, reduction or expiration of the insurance required herein becomes effective until thirty (30) days after Monsanto receives such notice.

   c) Contractor shall take out and maintain, at its expense, during the term of this Agreement, and for a minimum of two (2) years following the expiration or termination of this Agreement, at least the following insurance in insurance companies satisfactory to Monsanto:

4

| COVERAGE | LIMITS |
|---|---|
| i) Workers' Compensation | Statutory |
| ii) Employer's Liability | $1,000,000 each accident |
| iii) Commercial General Liability (Bodily Injury, Property) | $2,000,000 each occurrence, combined single limit Damage and contractual liability) |
| iv) Comprehensive or Commercial Automobile Liability (Bodily Injury or Property Damage) | $1,000,000 each occurrence, combined single limit |
| v) Umbrella Liability Insurance affording excess coverage over the underlying primary insurance required by subparagraphs i) through v) hereof, including Monsanto and others as an additional | $1,000,000 each occurrence |

Insured hereof in respect to excess coverage over the insurance herein required.

d) Notwithstanding any other provision of this Agreement, Contractor's general liability insurance shall (i) be provided on an "occurrence" form of policy, (ii) name Monsanto as an additional insured, and (iii) include coverage for all of Contractor's contractual liability under Article 10 with limits not less than those set forth above. Additionally, the required certificates shall indicate that such general liability insurance coverage will be primary to any other valid and collectible insurance.

e) Contractor shall secure from the company carrying Contractor's Workers' Compensation Insurance a waiver of subrogation in favor of Monsanto and its employees and agents. The required certificates shall indicate such waiver of subrogation.

f) The insurance requirements set forth herein are minimum coverage requirements and are not to be construed in any way as a limitation on Contractor's liability under this Agreement.

12. **NOTIFICATION OF CITATIONS AND CLAIMS.** Contractor agrees that it will promptly notify Monsanto of any of the following which is connected with any activities or operations of Contractor under this Agreement related to Contractor's use of RRM: (i) any warning, citation, indictment, claim, notice of violation, lawsuit or proceeding issued or instituted by any federal, state or local governmental entity or agency, (ii) the revocation of any license, permit or other document issued to Contractor by any such entity or agency, or (iii) any other claim (including, without limitation, claims for Workmen's Compensation) or lawsuit against Contractor, for personal injury, death or property damage.

13. **INSPECTIONS.** Monsanto shall have the right, but not the duty or obligation, to inspect and obtain copies of all written licenses, permits, administrative or judicial orders or other approvals issued by any governmental entity, agency or court to Contractor or its subcontractors which are applicable to this Agreement; to inspect and test, at its own expense, any transportation vehicles, vessels, containers or Facilities used in the performance of this Agreement; and to inspect the handling, loading, transportation, process or remediation operations conducted by Contractor in the performance of this Agreement. If Monsanto furnishes any comments, advice, equipment, or other assistance to Contractor, whether or not at Contractor's request, Monsanto shall not be liable for, and Contractor assumes all risk of, such advice and the results thereof. No inspection, review, comments, advice, or other assistance, if any, by Monsanto regarding the Facilities or Contractor's operations shall relieve Contractor of any of its obligations under this Agreement.

14. **EXCUSE OF PERFORMANCE.** The performance or observance by either party of any obligations of such party under this Agreement may be suspended by it, in whole or in part, in the event of any of the following which prevents such performance or observance: Act of God, war, riot, fire,

explosion, sabotage, strike, lockout, injunction, national defense requirements, compliance with governmental laws, regulations, orders or action, or any other cause (whether similar or dissimilar) beyond the control of such party and so long as such party is in compliance with applicable laws and regulations; provided, however, that the party so prevented from complying with its obligations hereunder shall immediately notify in writing the other party thereof and such party so prevented shall exercise diligence in an endeavor to remove or overcome the cause of such inability to comply, and provided further that neither party shall be required to settle a labor dispute against its own best judgment. Deliveries suspended or not made by reason of this section shall be canceled without liability, but this Agreement shall otherwise remain unaffected. Nothing in this Section 14 shall excuse Contractor from performance or observance of its obligations under this Agreement by reason of its failure or inability to observe or comply with Section 7(b) or 7(c) of this Agreement.

15. **RIGHT TO TAKE BACK.** In the event Contractor cannot convert RRM into ethanol, Contractor shall promptly notify Monsanto of such. If Contractor cannot convert RRM into ethanol or if the Agreement is terminated, Monsanto shall of the option to take back the unused RRM. Contractor shall cooperate with Monsanto if Monsanto exercises this option.

16. **ASSIGNMENT.** Contractor may not, whether by operation of law or otherwise, assign, subcontract or otherwise transfer any of its rights or delegate the performance of any of its obligations under this Agreement without Monsanto's prior written consent and any attempted assignment, subcontracting, transfer or delegation without such consent shall be void and of no effect. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

17. **SECRECY PROVISIONS.** Contractor, its employees and agents shall treat and maintain as Monsanto's confidential property, and not use or disclose to others, except as is necessary to perform this Agreement (and then only on a confidential basis satisfactory to Monsanto), any information (including any technical information, experience of data) regarding Monsanto's products, plans, programs, plants, processes, costs, equipment, operations or customers, or the chemical composition or quantity of the RRM and Shipping Materials delivered to Contractor, which may be disclosed to, or come within the knowledge of, Contractor, its employees and agents in the performance of this Agreement, without Monsanto's prior written consent. Contractor shall restrict access to information pursuant to this Agreement to those employees, agents and subcontractors who need such knowledge for the performance of this Agreement. The provisions of this Section 16 shall not apply to any information referred to in this section which Contractor establishes (i) has been published and has become part of the public domain other than by acts or omissions of Contractor, its employees and agents, (ii) has been furnished or made known to Contractor by third parties (other than those acting directly or indirectly for or on behalf of Monsanto) as a matter of legal right and without restriction on disclosure, or (iii) was in Contractor's possession prior to disclosure by Monsanto to Contractor and was not acquired by Contractor, its employees and agents directly or indirectly from Monsanto.

18. **RECORDS AND AUDITS.** Contractor will maintain, in accordance with generally recognized commercial accounting principles and practices, complete and accurate records of all matters relating to Contractor's performance obligations under this Agreement. Contractor shall maintain such records for a period of six (6) years after the termination or expiration of this Agreement. Monsanto or its representatives may audit Contractor's records, during normal business hours, at any time during the term of this Agreement and the six (6) year period following the termination or expiration of this Agreement. Monsanto shall be entitled to a reimbursement for all amounts determined in an audit to have been underpaid to Monsanto by Contractor plus interest on such underpaid sums at the rate of 1.5 percent per month, plus reimbursement of the expenses of the audit.

19. **SUPPLIER CODE OF CONDUCT.** Contractor has received, read, and will endeavor to comply with the Monsanto Supplier Code of Conduct, available at http://www.monsanto.com/whoweare/pages/supplier-code-of-conduct.aspx.

6

20. **MISCELLANEOUS.**

a) This Agreement constitutes the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement; and all prior agreements, negotiations, dealings, and understandings, whether written or oral, regarding the subject matter hereof, are hereby superseded and merged into this Agreement. No conditions, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms or conditions of this Agreement shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of any forms containing terms or conditions at variance with or in addition to those set forth in this Agreement. No waiver by either party with respect to any breach or default or of any right or remedy and no course of dealing or performance shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

b) As used in this Agreement, employees and agents of a party hereto shall be deemed to include such party's past, present and future officers and directors.

c) Section headings as to the contents of particular sections are for convenience only and are in no way to be construed as part of this Agreement or as a limitation of the scope of the particular sections to which they refer.

d) The validity, interpretation and performance of this Agreement and any dispute connected herewith shall be governed and construed in accordance with the laws of the State of Missouri. Any legal action or proceeding with respect to this Agreement may be brought in the state or federal courts of Delaware. Venue shall be laid in Delaware. The parties hereby irrevocably waive all right of trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Agreement. In the event a Party believes the other Party is in breach of the terms hereof for any reason(s), it shall provide written notice of such purported breach(es) describing such breach(es) with particularity (in fact and in legal impact) and the purported breaching Party shall be granted thirty (30) days from its actual receipt of such notice to cure said breach(es). If such breach is not cured within thirty days of the notice of breach, the non-breaching party may terminate this Agreement or any document hereunder in whole or in part.

e) If any term or provision of this Agreement or any application thereof shall be invalid or unenforceable, the remainder of this Agreement or any other application of such term or provision shall not be affected thereby.

f) Monsanto is at times a Federal contractor and for the following clause Monsanto is referred to as "contractor" and Contractor is referred to as "subcontractor": **This contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, gender identity, sexual orientation, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability. The Parties hereby incorporate the requirements of 41 C.F.R. §§ 60-1.4(a)(7), 60-250.5 and/or 60-300.5, 60-741.5, EO 13496 and 29 C.F.R. Part 471, Appendix A to Subpart A, if applicable.**

g) Contractor shall comply with the requirements of any applicable law implementing the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions or other applicable conventions, including the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act, and any other applicable anti-corruption law.

This Agreement shall not be binding on Monsanto unless executed by Monsanto and an authorized representative of Contractor and delivered to Monsanto within thirty (30) days from the date above.

IN WITNESS WHEREOF, Contractor and Monsanto have executed this Agreement effective as of the date first set forth above.

**Monsanto:**

Monsanto Company
By: *[signature]*
Name: Marianne Maguire
Title: NA Plant Sourcing Lead

**Contractor:**

AltEn, LLC
By: *[signature]*
Dennis M. Langley, President

8

**EXHIBIT A**

1.    Monsanto may offer to Contractor and Contractor shall accept the following materials from Monsanto:

    a.    Treated corn, sorghum, and wheat seed;
    b.    Untreated corn, sorghum, and wheat seed; and
    c.    Shipping Materials.

2.    In order to schedule an RRM shipment, Monsanto shall contact:

Tanner Shaw
Mobile: (702) 561-1022
Email: tshaw@mrgkc.com  or

Sharon Neill
Office: (402) 624-2000
Email: sneill@mrgkc.com

Contractor shall work with Monsanto to arrange transportation logistics and coordination of the shipment dates of the RRM within a 24 hours notice. Actual delivery shipment dates will vary based on pickup location(s) and volumes. Contractor can handle up to 50 Truck Loads per day at the Facility.

3.    Prior to sending RRM to Contractor, Monsanto shall provide the following information to Contractor:

    a.    Identification of each seed treatment used on the RRM; and
    b.    Safety Data Sheets for those seed treatments which are not currently on record with Contractor.

4.    All deliveries shall include appropriate bills of lading.

5.    Contractor shall unload and debag if necessary all RRM once it arrives at the Facilities.

6.    Contractor shall notify Monsanto weekly of Shipping Materials inventory ready for return shipment. Notifications will be sent to DL-AG-Logistics-DRPPackaging@monsanto.com. Monsanto will coordinate return deliveries and notify Contractor. Once shipped, the Contractor will notify Monsanto by the end of day. Monsanto will pay carrier directly for all shipping costs. Expected load quantities are 396 pallets and 44 nested boxes per truckload. Contractor shall keep reusable Shipping Materials in a clean, reusable condition. Contractor shall make reusable Shipping Materials available for return within 10 days after delivery. Upon Monsanto's request Contractor will work to meet special requests outside of normal process.

7.    Contractor shall dispose of any Shipping Materials that are not returned to Monsanto (e.g., bags and shrink-wrap) by means of any method approved by Monsanto. Contractor shall pay all costs associated with such disposal and shall not be entitled to reimbursement of these costs by Monsanto.

8.    Upon request, Contractor shall provide Monsanto with customized reports that describe handling and disposition of the RRM.

9.    Contractor shall supply Monsanto with certificates of destruction for all RRM delivered.

10.    Within 30 days after the end of any month during which RRM deliveries occurred, Contractor shall issue to Monsanto a monthly statement detailing Tons of RRM shipments during the previous month. Contractor shall have 30 days to pay Monsanto $25 per ton for all RRM delivered the previous month.

9