IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BAYER US LLC, | |
| Plaintiff, | **8:22CV82** |
| vs. | |
| ALTEN, LLC; MEAD CATTLE COMPANY, LLC; GREEN DISPOSAL MEAD LLC; PLATTE RIVER GREEN FUELS, LLC; TANNER SHAW, in his individual and official capacities; EARTH, ENERGY & ENVIRON-MENT, LLC; ALTEN OPERATING CO., LLC; E3 BIOFUELS, LLC; INTEGRATED RECY-CLING, LLC; FALCON ENERGY, LLC; MEAD ACQUISITION COMPANY, LLC; and GUBBELS VENTURES, LLC, | **MEMORANDUM AND ORDER REGARDING DEFENDANT GUBBELS VENTURES' MOTION TO DISMISS** |
| Defendants. | |

This is one of three lawsuits arising from the failure of the AltEn ethanol manufacturing plant in Mead, Nebraska, brought by suppliers of corn and other seed for use in the ethanol manufacturing process against the operators of the failed ethanol plant.[1] In this action, plaintiff Bayer US LLC (Bayer) seeks indemnification, contribution, contract, and other damages from the parties it contends are responsible for both the environmental conditions at the site of the AltEn ethanol plant and the costs that Bayer has incurred and continues to incur in responding to those conditions and stabilizing the site. Filing 1 at 1 (¶ 1).

This case is before the Court on the Motion to Dismiss Amended Complaint by newly added defendant Gubbels Ventures, LLC. Filing 131. In most cases involving a motion to

---

[1] *See* Filing 94 (preliminary injunction ruling in all three cases, Nos. 8:22cv70, 8:22cv71, and 8:22cv82), *published at Pioneer Hi-Bred Int'l, Inc. v. AltEn, LLC*, No. 8:22CV70, 2023 WL 1822724, at *1 (D. Neb. Feb. 8, 2023).

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the movant does not mean quite so literally that the challenged pleading fails to state a claim on which relief can be granted. In this case, however, Gubbels Ventures asserts, "It would be impossible for Gubbels [Ventures] to defend itself against these claims when the Amended Complaint is devoid of any facts alleging that Gubbels [Ventures] did anything that could be actionable." Filing 132 at 2. For the reasons stated below, the Motion to Dismiss Amended Complaint by Gubbels Ventures is granted.

## I.   INTRODUCTION

Because this case is before the Court on a Rule 12(b)(6) motion to dismiss, the Court draws the factual background primarily from Bayer's Amended Complaint, Filing 113. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (explaining that on a Rule 12(b)(6) motion, a court must "accept the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant." (internal quotation marks and citation omitted)). However, "[c]ourts may [also] consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,] without converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment." *See Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks and citations omitted). The Court will interpolate facts from appropriate sources where necessary and where the parties have invited the Court to do so.

### A.  Factual Background

In its Amended Complaint, Bayer alleges that Gubbels Ventures along with various other entities "operated at the site of the AltEn plant and/or related operations and worked together as a 'closed-loop' system comprising an ethanol plant, cattle feedlot, and bio-char production unit."

Filing 113 at 2 (¶ 3). Bayer alleges further that "Defendant Tanner Shaw ran and/or managed the Defendants' operations and Defendants' operations are under his direction and control." Filing 113 at 2 (¶ 2).

Bayer alleges Monsanto Company, which is now an affiliate company of Bayer, provided treated and untreated seed (RRM)[2] to AltEn for ethanol production. Filing 113 at 2 (¶ 3). Bayer alleges that "AltEn failed to properly handle, store, and otherwise manage the RMM [sic] and the byproducts from the ethanol manufacturing process in violation of federal and state laws and AltEn's contractual commitments to Bayer." Filing 113 at 3 (¶ 4). Bayer alleges,

> 5.      Instead of complying with numerous emergency orders, notices of violations and other directives issued by the Nebraska Department of Environment and Energy ("NDEE") and engaging in remediation efforts, AltEn and its officers and affiliates – led by Tanner Shaw – have (i) abandoned the site, (ii) sold off their assets to prevent their creditors (including the State and Bayer) from having access to assets necessary to perform remediation and reimburse Bayer for the costs it has incurred to respond at the site, (iii) hindered the response and stabilization efforts performed by Bayer and other seed companies, (iv) refused to undertake or participate in any way in those response and stabilization activities, (v) interfered with Bayer's right to obtain insurance proceeds under AltEn's pollution liability policy and (vi) dissipated assets to avoid any responsibility for the environmental problems that Defendants caused.

Filing 113 at 3 (¶ 5).

Bayer alleges that it has conducted extensive emergency response stabilization activities at the site since February 2021, at the request of Federal and State authorities. Filing 113 at 3 (¶ 6). Bayer alleges that to date it and other seed companies have spent millions of dollars to stabilize the site, while AltEn has failed to reimburse Bayer for those costs. Filing 113 at 4 (¶¶ 7–9). Bayer now "seeks relief against AltEn, Mead Cattle, Green Disposal, Platte River and

---

[2] It appears that RRM stands for Renewable Resource Material. *See* Filing 113-1 at 1 (Renewable Resource Material ("RRM") Agreement).

potentially other related entities to contribute to the costs they caused, are responsible for, and have thus far willfully avoided and prevented from being paid." Filing 113 at 4 (¶ 10).

Apart from appearing in the case caption and as an entity that allegedly "operated at the site of the AltEn plant," *see* Filing 113 at 2 (¶ 2), there are few express mentions of Gubbels Ventures in the Amended Complaint. Indeed, the only other mentions of Gubbels Ventures are the two in the following paragraph:

> 24.     Gubbels Ventures, LLC is a Nebraska limited liability company. Its principal office address listed with the Nebraska Secretary of State is 8217 County Road 33, Blair, Nebraska 68008. Upon information and belief, Gubbels Ventures, LLC was a member of Integrated Recycling.

Filing 113 at 7 (¶ 24).

Nevertheless, Bayer asserts that its claims against Gubbels Ventures are viable, based on other allegations. Bayer alleges,

> 28.     At all relevant times, upon information and belief, the corporate entities named as Defendants herein were operated and/or managed by the same persons, among whom is Defendant Tanner Shaw, a resident of Kansas.

Filing 113 at 8 (¶ 28). Bayer emphasizes its allegation that Shaw is the individual at the center of "a complex web of companies related to the AltEn Facility in Mead, Nebraska," as set out in Filing 113 at 4–8 (¶¶ 12–28), and points to an organizational chart of entities from January 1, 2015, through April 29, 2020, Filing 50-2. *See* Filing 136 at 8. Bayer also alleges, "At all relevant times, Shaw was and is the President and/or corporate officer and/or corporate representative of all corporate entities named as Defendants herein." Filing 113 at 8 (¶ 31). Bayer alleges further that "[a]t all relevant times, upon information and belief, the corporate entities named herein were operated and/or managed by the same persons, among whom were Shaw and his late stepfather, Dennis Langley, both residents of Kansas." Filing 113 at 8 (¶ 32).

4

Bayer also points to AltEn's marketing materials for its so-called "Green Recycling Program," which are attached to its Amended Complaint, as demonstrating that Gubbels Ventures can properly be held liable on its claims. Filing 136 at 5. Those materials provide in pertinent part as follows:

> AltEn is charging $00 for all seed processing delivered to Mead, NE. Contact Craig Gubbels to get started - email - CGubbels@mrgkc.com or 402-658-9997 AltEn will do all the arranging and get shipping pricing to make the entire process of green recycling treated discard seed as easy as one phone call or email.

Filing 113-4 at 1 (numbered para. 3). In its Opposition Brief, Bayer asserts that "Mr. Craig Gubbels (Gubbels) is the registered agent [of] Defendant Gubbels Ventures and is believed to be a member of the same." Filing 136 at 5. There is no similar allegation in the Amended Complaint, *see generally* Filing 113, nor any indication of the basis for Bayer's belief in its Opposition Brief, so that such belief appears to be based on the similarities in names.

The first mention of "Gubbels Ventures, LLC," in Shaw's deposition in the record in this case—which Bayer invites the Court to consider, *see* Filing 136 at 6, 13—is not by Shaw but by counsel for Bayer's co-plaintiff Pioneer Hi-Bred International (Pioneer),[3] who identified Gubbels Ventures, LLC, as an "unrelated party." Filing 50-1 at 24 (Shaw Depo., 70:17–22). When Shaw was asked again about Gubbels Ventures, LLC, Shaw agreed that he saw that the organizational chart indicated that Gubbels Ventures, LLC, was a 50 percent owner of Integrated Recycling, LLC. Filing 50-1 at 27 (Shaw Depo. at 84:2–6). Shaw answered "yes" when asked if Integrated Recycling, LLC, was handling "debagging of the seed." Filing 50-1 at 27 (Shaw Depo. at 84:14–17).

---

[3] Shaw's deposition was taken in Case No. 8:22-cv-70 and Case No. 8:22-cv-71. *See* Filing 50-1 at 1.

Bayer also places emphasis on the following allegations that it contends show that "Defendants" including Gubbels Ventures are liable to Bayer directly or through the alter ego doctrine:

116. The Defendants are primarily owned and operated by Tanner Shaw and share numerous officers and agents.

117. The organizational structures of the companies owned or controlled by Tanner Shaw are, presumably by design, impossible to determine. There are dozens of AltEn-related entities; all of which frequently change names and places of incorporation or become inactive.

118. Upon information and belief, Shaw grossly undercapitalized the Defendants.

119. Upon information and belief, Shaw diverted funds from the Defendants for his own improper uses.

120. Upon information and belief, the Defendants are mere facades for the personal dealings of Shaw and their operations are carried on by Shaw in disregard of the corporate entities.

121. The Defendants are the alter egos of Shaw, and the corporate veil should be pierced and Shaw held personally liable for all of the entities' actions.

122. Upon information and belief, Shaw exercised his control over the Defendants to commit a fraud against Bayer.

123. It would be an injustice to Bayer if Shaw and the other Defendants were permitted to perpetrate such a fraud to avoid the material obligations that AltEn committed to Bayer to undertake with respect to the RRM including the payment of significant sums and the management of the RRM and RRM-related by-products in a safe manner, and Shaw is therefore subject to personal liability for Bayer's damages as alleged herein.

124. Upon information and belief, Defendants Shaw and Platte River Green Fuels control AltEn to the point that it shows no separate corporate interests of its own.

125. Upon information and belief, the same, or substantially the same, owners control the Defendants and their management and financing are so commingled that following the corporate form would lead to injustice.

126.   It would be an injustice to Bayer if Defendants were permitted to perpetrate such a fraud to avoid paying Bayer the amounts due and owed to it, and Defendants are therefore subject to liability for Bayer's damages as alleged herein.

Filing 113 at 22–23 (¶¶ 116–126).

## B.  Procedural Background

The relevant procedural background at this point is limited to Bayer's Amended Complaint and Gubbels Ventures' Motion to Dismiss. Bayer filed its Amended Complaint on June 6, 2023, Filing 113, just shy of four months after the Court ruled on the plaintiffs' Motions for Preliminary Injunction in the consolidated cases on February 8, 2023, Filing 94, and approximately 15-1/2 months after Bayer filed its original Complaint on February 22, 2022. Filing 1. Among the nine claims in the Amended Complaint, five claims are—or more accurately stated, appear to be—brought against Gubbels Ventures because they are against "the Defendants." Count III seeks declaratory and injunctive relief on voidable transfers pursuant to the Nebraska Uniform Voidable Transactions Act (UVTA), Neb. Rev. Stat. §§ 36-801–36-815 referring to actions of "Defendants." Filing 113 at 27. Count IV is a claim for "Common Law Indemnity against All Defendants." Filing 113 at 29. Count V is a claim for "Contribution against All Defendants." Filing 113 at 30. Count VI is a claim for "Equitable Subrogation against All Defendants." Filing 113 at 30. Count VII is a claim for "Unjust Enrichment against All Defendants." Filing 113 at 31.

Gubbels Ventures' Motion to Dismiss followed on July 10, 2023. Filing 131. The Motion itself states that "Counts III–VIII are insufficient to provide fair notice to Gubbels to respond and defend itself." Filing 131 at 1. That assertion is odd where Count VIII is not against "all Defendants," let alone against "Gubbels Ventures," but expressly states that it is "against AltEn."

7

Filing 113 at 31. Gubbels Ventures "asks that the Court dismiss the Amended Complaint, with prejudice, in its entirety"—but presumably only as to Gubbels Ventures and only as to claims directed at Gubbels Ventures. Filing 131 at 1.

## II. LEGAL ANALYSIS

### A. Applicable Standards

Gubbels Ventures' Motion involves the typical grounds for Rule 12(b)(6) motions, that is, the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

8

possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth

Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed

piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d

at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the

complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v.*

*AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*,

4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual

allegations lacking enough specificity to raise a right to relief above the speculative level are

insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF*

*Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A

court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD*

*Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

What is less typical about this case is the issue of the extent to which the Court can look

beyond the face of the complaint on a Rule 12(b)(6) motion without converting it into a motion

for summary judgment. Rule 12(d) provides as follows:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under
> Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not
> excluded by the court, the motion must be treated as one for summary judgment
> under Rule 56. All parties must be given a reasonable opportunity to present all
> the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Nevertheless, the Eighth Circuit Court of Appeals has repeatedly

recognized that courts can consider additional documents on a Rule 12(b)(6) motion:

> Courts may consider "'matters incorporated by reference or integral to the claim,
> items subject to judicial notice, matters of public record, orders, items appearing
> in the record of the case, and exhibits attached to the complaint whose

9

authenticity is unquestioned[,]' without converting" a motion to dismiss under Rule 12(b)(6) into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017), quoting *Miller v. Redwood Tox. Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

*Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022). The statement of documents the court may consider is sometimes pared to those at issue in the particular case before the court. *Compare id.* ("Specifically, this Court properly considers 'underlying state court decisions because they [a]re matters of public record.'" (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)); *with Rossi v. Arch Ins. C*o., 60 F.4th 1189, 1193 (8th Cir. 2023) ("At the motion to dismiss stage, we can consider documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" (also quoting *Zean*, 858 F.3d at 526)).

Indeed, these additional documents may even contradict allegations in the complaint in some situations. *See, e.g.*, *Meardon v. Register*, 994 F.3d 927, 935 (8th Cir. 2021) (explaining that "[b]ecause [a written contract's] contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed."), *reh'g denied* (May 26, 2021); *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (concluding that the court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence"); *Zean*, 858 F.3d at 526 ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." (internal quotation marks and citations omitted)).

10

## B. Sufficiency of Bayer's Allegations

Gubbels Ventures attacks in turn the sufficiency of the allegations supporting each of the claims purportedly pleaded against it. Filing 132 at 5–10. Bayer likewise defends the sufficiency of its pleading of each of its claims against "Defendants" as sufficient to state claims against Gubbels Ventures. Filing 136 at 9–17. The Court finds it unnecessary to address the parties' arguments concerning individual claims ostensibly against Gubbels Ventures. Instead, the Court finds the deficiencies of Bayer's pleading of those claims is patently obvious from the parties' "umbrella" arguments, *see* Filing 132 at 4; Filing 136 at 3, 8, and a review of the Amended Complaint in its entirety and certain other documents the Court may properly consider. *See, e.g.*, *Roberson*, 42 F.4th at 928.

### 1. *The Parties' Arguments*

Gubbels Ventures' "umbrella" argument is that taking all allegations in the Amended Complaint as true is no help to Bayer in this case because there are no allegations against Gubbels Ventures to take as true. Filing 132 at 4. Indeed, Gubbels Ventures argues that there are no allegations against Integrated Recycling that would form the basis of a claim to pierce the corporate veil to make Gubbels Ventures liable as a part owner of Integrated Recycling. Filing 132 at 4. Gubbels Ventures argues further that allegations that lump together "Defendants" without specifying claims against each individual defendant are insufficient. Filing 132 at 4.

Bayer's "umbrella" response is that it is now properly asserting claims against the "Related Entities" including Gubbels Ventures against whom the Court entered the Preliminary Injunction in this case. Filing 136 at 3. Bayer then asserts that Gubbels Ventures' attempts to minimize the allegations against it based on the number of times "Gubbels" appears in the Amended Complaint misses the point. Filing 136 at 8. Bayer argues instead that "the crux of the

Amended Complaint and the entirety of the litigation pending is that Defendants' web of corporate entities and joint governance schemes along with their extensive promotion of their 'closed-loop' operational scheme support holding the related entities, including Gubbels Ventures, responsible for the environmental conditions at the Site." Filing 136 at 8. Bayer argues that after the preliminary injunction hearing, the Court found that the Defendant entities are inextricably intertwined and Bayer now asserts that Gubbels Ventures was part of that web. Filing 136 at 8. Thus, Bayer contends that referencing Gubbels Ventures both individually and collectively as "Defendants" is sufficient. Filing 136 at 8.

> 2.    *The Amended Complaint Fails to Allege Plausible Claims against Gubbels Ventures*

>> a.   The Amended Complaint Is Not Consistent with the Court's Preliminary Injunction Ruling

The Court first takes issue with Bayer's argument that after the preliminary injunction hearing, the Court entered the Preliminary Injunction against the "Related Entities" including Gubbels Ventures, Filing 136 at 3, and that the Court found a web of inextricably intertwined companies responsible for conditions at the AltEn site of which Gubbels Ventures is a part. Filing 136 at 8. As mentioned above, the Court may properly consider court orders in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into a motion for summary judgment. *See Roberson*, 42 F.4th at 928. Doing so is particularly appropriate when the orders are in the same case in which a new pleading is offered and challenged. *Cf. id.* ("Specifically, this Court properly considers underlying state court decisions because they [a]re matters of public record." (internal quotation marks and citation omitted)). Thus, the Court begins by clarifying what the Court actually found in its Memorandum and Order on Joint Motion for Preliminary Injunction. Filing 94.

12

In that Memorandum and Order, the Court explained, "The Seed Companies seek a preliminary injunction enjoining the Operators from transferring or concealing any and all assets and property of the Operators and related entities (the Related Entities) and the prejudgment attachment of all such assets and property." Filing 94 at 2. The Court then observed, "There are several Related Entities with relationships to the Operators and each other that might fairly be described as labyrinthine," citing the same organizational chart Bayer refers to in this case as Filing 50-2. Filing 94 at 8. Importantly, the Court explained, "The Seed Companies identify the Related Entities as Earth Energy & Environment, LLC (E3); AltEn Operating Company (AltEn Op Co); Greencycle Solutions (Greencycle); Integrated Recycling, LLC (Integrated); E3 Biofuels, LLC; Falcon Energy LLC; and Mead Acquisition Company, LLC." Filing 94 at 8 n.6 (citing the Brief in Support of Plaintiffs' Joint Motion for Preliminary Injunction and Order of Immediate Attachment filed in this case as Filing 47 at 2). Gubbels Ventures is conspicuous by its absence from this list. Indeed, there is no mention of Gubbels Ventures anywhere in the Court's Memorandum and Order. *See generally* Filing 94.

Thus, to suggest that Gubbels Ventures is a "Related Entity" or is part of the "web" of "intertwined" companies found by the Court is a mischaracterization of the Court's prior ruling. The Court has never found or suggested that Gubbels Ventures is or even might be an entity against which Bayer could assert any of its claims. To plead plausible claims against Gubbels Ventures, Bayer must do more than simply allege that Gubbels Ventures is a "Related Entity." *See Richardson*, 2 F.4th at 1068 (explaining that "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable" (internal quotation marks and citations omitted)).

13

       b.   Allegations that Gubbels Ventures Is Part of the Web of
           Shaw's Companies Is Contradicted by Evidence in the Record

Next, the Court concludes that it is not required to accept as true Bayer's allegations that Gubbels Ventures is an entity against which Bayer may assert its claims. Those allegations are what Bayer argues are "the crux of the Amended Complaint and the entirety of the litigation pending," that is, "that Defendants' web of corporate entities and joint governance schemes along with their extensive promotion of their 'closed-loop' operational scheme support holding the related entities, including Gubbels Ventures, responsible for the environmental conditions at the Site." Filing 136 at 8. The specific allegations on which Bayer relies are that Shaw is the individual at the center of "a complex web of companies related to the AltEn Facility in Mead, Nebraska," as set out in Filing 113 at 4–8 (¶¶ 12–28); that "[a]t all relevant times, Shaw was and is the President and/or corporate officer and/or corporate representative of all corporate entities named as Defendants herein," Filing 113 at 8 (¶ 31); and that "[a]t all relevant times, upon information and belief, the corporate entities named herein were operated and/or managed by the same persons, among whom were Shaw and his late stepfather, Dennis Langley, both residents of Kansas," Filing 113 at 8 (¶ 32). Bayer invites the Court to consider the organizational chart of entities from January 1, 2015, through April 29, 2020, Filing 50-2, as support for these allegations. *See* Filing 136 at 8.

That same organizational chart, however, identifies Gubbels Ventures, LLC, as an "Unrelated Party" although it indicates that Gubbels Ventures is a 50% owner of Integrated Recycling, LLC. Filing 50-2. In its Opposition Brief, Bayer asserts that "at the times relevant to this litigation, Integrated Recycling, and by extension its 50% members E3 and Gubbels Ventures, were responsible for the debagging, recycling, and composting of materials at the

AltEn facility in Mead, Nebraska." Filing 136 at 6 (citing Filing 50-1 at 28–30 (Shaw Depo. 85–95)). While there are a few mentions of Craig Gubbels in the cited deposition pages, there are no mentions of Gubbels Ventures. *See* Filing 50-1 at 28–30 (Shaw Depo. 85–95). When asked what "Mr. Gubbels and his company were doing out at the site," presumably suggesting "his company" was Gubbels Ventures, Shaw testified that he did not know "exactly what he [*i.e.*, Craig Gubbels] was required to do." Filing 50-1 at 28 (Shaw Depo., 87:16–23). Because the organizational chart and Shaw's deposition are in the record in this case, the Court may properly consider them. *See Roberson*, 42 F.4th at 928 (explaining that a court may properly consider on a Rule 12(b)(6) motion among other things "items appearing in the record of the case" without converting the motion to one for summary judgment). Furthermore, Bayer has expressly invited the Court to consider these documents.

These documents contradict Bayer's allegations because they give no hint that Shaw owns, controls, or is an officer of Gubbels Ventures. *Cf. Meardon*, 994 F.3d at 935 (explaining that "[b]ecause [a written contract's] contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed."); *Waters*, 921 F.3d at 734 (concluding that the court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence"); *Zean*, 858 F.3d at 526 ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." (internal quotation marks and citations omitted)). Even if the Court were to entertain Bayer's suggestion in its Opposition Brief that references to "Craig Gubbels" activities at the AltEn site provide inferences that "Gubbels Ventures" was involved in operation of the

15

AltEn site, the Court does not find such an inference plausible based on no more than the shared part of Gubbels Ventures' name. There are no allegations to be found in the Amended Complaint that Craig Gubbels is indeed the owner, operator, or director of "Gubbels Ventures" or that the reference to Gubbels and "his company" by Bayer's counsel (not Shaw) during Shaw's deposition provides the required plausible inference. There are also no allegations to be found in the Amended Complaint that plausibly suggest a basis to pierce the corporate veil to impose liability on Gubbels Ventures because of its part ownership of Integrated Recycling.

At a minimum, the Court concludes that these documents demonstrate that substantial factual allegations that cannot be found in the Amended Complaint are required to support a plausible inference—not merely a conceivable one—that Gubbels Ventures has any relationship to Shaw or even Integrated Recycling that would state a claim for piercing the corporate veil or suggest that Gubbels Ventures is an alter ego of any other entity. *See Mitchell*, 28 F.4th at 895 ("A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." (quoting *Iqbal*, 556 U.S. at 680-83)). Without such a plausible factual basis, Bayer's allegations are simply speculative and conclusory and do not state a claim. *See Richardson*, 2 F.4th at 1068.

### c.   Allegations "Lumping" Defendants Together Are Insufficient

Finally, the Court agrees with Gubbels Ventures that Bayer's claims against Gubbels Ventures are fundamentally flawed because Gubbels Ventures is simply "lumped together" with all other "Defendants." Filing 132 at 4. As the Eighth Circuit Court of Appeals explained more than half a century ago,

16

> The complaint lumps all the nineteen defendants together in its charge that they had wrongfully collected six million dollars from plaintiff's songs and it demands judgment against all for a million and one half. However anxious the courts are to decide the claims of every litigant on the merits, no defendant can justly be subjected to the maintenance in court of such demands for vast sums of money against him unless the demands are presented in the orderly way the rules require. Neither can the district judges draw pleadings for one litigant to bolster them against attack from the other. The plaintiff's complaint was framed in disregard of lawful requirements and for that reason the dismissal of it must be held to have been without error.

*Vance v. Am. Soc. of Composers, Authors & Publishers (ASCAP)*, 271 F.2d 204, 207 (8th Cir. 1959).

This view that "lumping" defendants together is inadequate is not outdated. Much more recently, the Eighth Circuit observed,

> Like the district court, we find it "incredibly difficult to sift through [appellants'] 72 single-spaced pages and 340 numbered paragraphs to ascertain any coherent argument as to why [defendants] are liable." The bulk of appellants' highly confusing Omnibus Petition consists of sheer speculation and conclusory allegations of defendants' wrongdoing.

*Quintero Cmty. Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1009 (8th Cir. 2015). More specifically, in *Quintero Community Association*, the court stated,

> The district court concluded that the allegations in appellants' Omnibus Petition were similarly deficient, failing to plead facts establishing plausible claims that each officer and director could be personally liable to appellants. Appellants fail to provide specific cites to the Omnibus Petition refuting this conclusion. "Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir.2006). Likewise, without guidance, we will not mine a seventy-two-page complaint searching for nuggets that might refute obvious pleading deficiencies.

*Quintero Cmty. Ass'n Inc.*, 792 F.3d at 1009. Still further, the court concluded,

> As to the claims that the Director Defendants breached fiduciary duties to appellants, [plaintiffs'] alleged no facts plausibly suggesting that each Hillcrest Bank officer, director, or shareholder consciously assumed to act as their fiduciaries in these business transactions. *See Urias v. PCS Health Sys., Inc.*, 211

17

Ariz. 81, 118 P.3d 29, 35 (App.2005); *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235, 1243–44 (1982). Nor did they allege how each Director Defendant substantially assisted primary tortfeasor McClung in a breach of fiduciary duty that proximately caused appellants' injuries. *See Cal X–Tra v. W.V.S.V. Holdings, LLC*, 229 Ariz. 377, 276 P.3d 11, 40 (App.2012) (elements of aiding and abetting); *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 811 P.2d 1220, 1231–32 (1991) (same). "[D]irector and officer liability in breach of fiduciary duty actions is determined on an individual—rather than a collective—basis." *In re Farmland Indus., Inc.*, 335 B.R. 398, 410 (Bankr.W.D.Mo.2005).

*Quintero Cmty. Ass'n Inc.*, 792 F.3d at 1009–10; *accord Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." (citing district court decisions so holding)).

Each of the claims ostensibly against Gubbels Ventures simply identifies "Defendants" and lumps them together without attempting to state—and thus without plausibly suggesting—how Gubbels Ventures (or any other individual defendant) acted as Shaw's or any other entity's alter ego or substantially assisted the primary tortfeasors, Shaw and AltEn, in proximately causing Bayer's injuries. *Id.*; *Vance*, 271 F.2d at 207; *Tatone*, 857 F. Supp. 2d at 831; *see also* Filing 113 at 27 (Count III referring to "Defendants" throughout); Filing 113 at 29 (Count IV, same); Filing 113 at 30 (Count V, same); Filing 113 at 30 (Count VI, same); Filing 31 (Count VII, same). Although several paragraphs of the Amended Complaint allege various relationships among various "Defendants," *see* Filing 113 at 22–23 (¶¶ 116–126), those allegations are little more than conclusory assertions, some of which embrace legal conclusions, that are insufficient to state a claim. *Richardson*, 2 F.4th at 1068; *Knowles*, 2 F.4th at 755. To put it another way, in the absence of any allegations as to Gubbels Ventures' specific actions, simply lumping Gubbels Ventures with other Defendants is conclusory and therefore inadequate. *Id.*

18

Bayer's pleadings are woefully inadequate to state any claims against Gubbels Ventures.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that the Motion to Dismiss Amended Complaint by newly added defendant Gubbels Ventures, LLC, Filing 131, is granted, and all claims against Gubbels Ventures in the Amended Complaint, Filing 113, are dismissed.

Dated this 27th day of October, 2023.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

19